IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL ACTION NO. 3:20-CR-00079-KDB-DCK

| | |
|---|---|
| UNITED STATES AMERICA,<br><br>v.<br><br>THUY TIEN LUONG,<br><br>Defendant. | **PRELIMINARY ORDER OF FORFEITURE** |

**THIS MATTER** is before the Court on the Government's Motion for Preliminary Order of Forfeiture. (Doc. No. 45) ("Motion"). Defendant opposes the Motion. (Doc. No. 48). The Government requests, pursuant to Fed. R. Crim. P. 32.2(b) and 18 U.S.C. § 1594(d), that this Court enter a Preliminary Order of Forfeiture for the following:

- Approximately $2,209 in United States Currency seized on or about June 26, 2018 during execution of a Search Warrant at Luxury Nails Salon in Davidson, North Carolina (hereafter, "the Currency");

- One 1.01 carat diamond set on a metal bracelet, found bagged with a diamond certificate and a receipt of purchase by victim K.D., and seized on or about June 26, 2018 during the execution of a Search Warrant at Luxury Nails Salon in Davidson, North Carolina (hereafter, "the Bracelet");

- Approximately $50,000 in funds seized on or about August 9, 2018, via Seizure Warrant, from Wells Fargo Account 5867, such account held in the name of Thuy Tien Thuy Luong DBA Luxury Nails Salon (hereafter, "Defendant's Salon Account" and "the Funds").

For good cause shown and based on the preponderance of the evidence, this Court will grant the Motion.

1

## I. BACKGROUND

On December 16, 2020, a Grand Jury in the Western District of North Carolina returned a Superseding Indictment ("Indictment") against Defendant, charging her with one count of forced labor in violation of 18 U.S.C. § 1589. (Doc. No. 27). The Indictment describes that Defendant forced victim K.D. to work at Luxury Nails Salon in Davidson, North Carolina from October 2016 to June 26, 2018. The Indictment also includes a Notice of Forfeiture and Finding of Probable Cause for the Currency and Funds.

By way of background, law enforcement had previously seized the Currency and Bracelet during the execution of a search warrant at Luxury Nails Salon on June 26, 2018. On August 8, 2018, Special Agent Kelly Harrison from the Department of Homeland Security applied for a warrant to seize $50,000 of $103,171.47 of the funds in Defendant's Salon Account. Law enforcement sought to seize the Funds on the bases that: (1) K.D. had worked countless hours at the salon, enriching the salon while she was often unpaid or paid and immediately forced to return her pay in cash to Defendant; and (2) that Defendant had used the Salon Account to pay rent for the salon and purchase salon tools that were used to torment and abuse K.D. A Magistrate Judge found that there was probable cause for the seizure of the Funds and promptly issued the Warrant. Law enforcement seized the Funds the next day on August 9, 2018. (W.D.N.C. Case No. 3:18MJ260).

Defendant elected a jury trial on the forced labor charge. Following roughly a week of evidence, the Jury returned a guilty verdict. (Doc. No. 40). Defendant waived a jury determination on forfeiture, and the Court ordered further briefing on the issue. Briefing has concluded and the matter is now ripe for determination by the Court.

## II. LEGAL STANDARD

Title 18 U.S.C. § 1594(d) requires that any person convicted of forced labor shall forfeit (1) any interest in any property that was involved in, used, or intended to be used to commit or to facilitate the commission of the forced labor offense, and any property traceable to such property; and (2) any property constituting or derived from any proceeds that the defendant obtained, directly or indirectly, as a result of the offense, or any property traceable to such property. Federal Rule of Criminal Procedure 32.2(b)(1) provides for the preliminary forfeiture, pending petitions by third parties, of assets in a criminal case. Forfeiture is appropriate upon a court finding of nexus, or connection, between the property and the violations. Fed. R. Crim. P. 32.2(b)(1)(A).

As for property "involved in, used, or intended to be used to commit or to facilitate" the crime, there is a nexus if there is a substantial connection between the property to be forfeited and the crime. *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010). "Substantial connection may be established by showing that use of the property made 'the prohibited conduct less difficult or more or less free from obstruction or hinderance.'" *Id.* (quoting *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir. 1990)).

In the case of proceeds, there is a nexus if Defendant would not have received the proceeds "but for" the involvement in the crime. *See United States v. Farkas*, 474 F. App'x 349, 359-60 (4th Cir. 2012); *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 712 (E.D. Va. 2005). "Strict tracing from a particular criminal act to a particular asset is not required if the totality of the circumstances establish that the asset constitutes or is derived from proceeds." *United States v. Guess*, No. 3:10cr145-MOC, 2015 WL 1208882, at *2 (W.D.N.C. March 17, 2015) (citing cases from the Sixth Circuit and the District of Maryland).

The Court's finding may be based on evidence already in the record and any additional evidence or information submitted by the parties and accepted by the Court as relevant and reliable. Fed. R. Crim. P. 32.2(b)(1)(B). The burden is on the government to establish, by a preponderance of the evidence, that the property at issue is subject to forfeiture. *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003).

## III. DISCUSSION

The preponderance standard is satisfied in this case by the trial evidence and the record. This evidence includes:

- After K.D. paid back a prior debt to Defendant, Defendant forced K.D. to draft a $180,000 debt contract for a fabricated debt and to labor at Defendant's salon to pay-off the note. (Tr. Ex. 7B). K.D. labored for a significant amount of time under this debt contract;

- From January 2017 through February 2018, K.D. paid $12,000 in checks to Defendant as a result of Defendant's various threats of serious harm to K.D. (Tr. Ex. 13C-13G);

- In partial repayment of the purported debt, Defendant forced K.D. to turn-over the Bracelet, which had been purchased for $5,500, to Defendant (Tr. Ex. 12A);

- From May 2018 through June 2018, K.D. received no less than $4,188 in paychecks from Defendant's Salon Account, but Defendant forced K.D. to cash these payments and turn-over the cash to Defendant (Tr. Ex. 14A-14E, 14H);[1]

- According to bank statements from January 2017 through June 2018 (the time K.D. was subjected to forced labor),[2] Defendant's Salon Account, from which law enforcement seized the Funds, grossed $482,679.72 in "Deposits/Credits," the overwhelming majority of which were merchant deposits for salon business (Tr. Ex. 14F, 14H; Doc. No. 45-1);

---

[1] While it is difficult to precisely trace the origin of seized cash, trial evidence established that Defendant would force K.D. to turn-over the cash from the paychecks to Defendant and did so in the months and days immediately preceding the seizure of the Currency from Defendant's Salon.

[2] Bank statements for January 2018 and June 2018 were admitted at trial as Trial Exhibits 14F and 14H. Prior to trial, the Government filed a Notice of Intention to Offer Certified Records, (Doc. No. 24), as to all of Defendant's bank statements from January 2017 through May 2018, including the two sets of statements that were admitted at trial. Defendant did not object. The Government has attached the bank statements not admitted at trial to its forfeiture motion.

4

- K.D. worked seven days per week for 10-12 hours per day, with the exception of 6-8 hours on Sundays. This amounted to K.D. working anywhere from 66 hours to 80 hours per week. K.D. was one of only a few workers in the Salon,[3] and her work contributed to a significant portion of the services the salon provided to customers and the revenue that the business was able to acquire during this period. (W.D.N.C. 3:18MJ260, Doc. No. 2-2, ¶ 56);

- K.D. did not receive payment for the work she performed the last two weeks of June (Trial Testimony) (Presentence Report, Doc. No. 50, ¶ 16);

- Defendant used her Salon Account, from which law enforcement seized the Funds, to pay rent for the salon where she forced K.D. into labor, and physically attacked and emotionally berated her (Tr. Ex. 14F, 14H; Doc. No. 45-1) (W.D.N.C. 3:18MJ260, Doc. No. 2-2, ¶ 41); and

- Defendant also used her Salon Account for the purchase of implements at the salon, such as the scraper and cuticle tool used to torture and abuse K.D. to force her to work (Tr. Ex. 1J-1L, 11H, 12B, 21) (W.D.N.C. 3:18MJ260, Doc. No. 2-2, ¶¶ 47-48).[4]

This evidence establishes a nexus between Defendant's offense and the seized Currency, Bracelet, and Funds. As for the Currency, Defendant forced K.D. to cash her paychecks and immediately turn over the money to Defendant close in time to when the Currency was discovered by law enforcement. With regards to the Bracelet, the evidence at trial established that Defendant forced K.D. to give her the Bracelet as part of the "debt" K.D. owed Defendant.

---

[3] For example, K.D. was one of four employees at the Salon from March 1, 2018 to July 18, 2018. The four employees included K.D., Employee 2 (Defendant's mother), Defendant, and Nip Tsi (Defendant's boyfriend, now husband). Defendant did not perform services on customers, but was mainly a management figure at the Salon. Tsi worked part-time, and it was unclear whether he ever worked full-time. *See also* (Doc. No. 48, at 3) (noting that, other than K.D., the salon had three to four other persons working there from 2016 to 2018).

[4] Defendant signed a business check in the amount of $597.00 paid to "Maxim Nail Mall," which SA Harrison confirmed sells bulk quantity professional nail service products, such as the foot scraper and cuticle tool previously described as tools used in the normal operations and services provided by a nail salon as well as being the tools that were used to assault K.D. (W.D.N.C. 3:18MJ260, Doc. No. 2-2, ¶¶ 47-48). Cuticle pushers and heel scrapers were found in bulk volume packaging during law enforcement's search of the Salon. *Id.* ¶ 31.

5

As for the Funds, Defendant received significant revenue from the forced labor of K.D. for over a year by requiring her to work long hours at the Salon. During this time, Defendant did not pay K.D. for some of her work or required her to return the money from her paycheck. At other times, Defendant required K.D. to pay her thousands of dollars in checks. As one of only a small handful of employees at the Salon, K.D. played a substantial role in generating revenue for the Salon throughout the time she was forced to work for Defendant. That revenue was then placed into Defendant's Salon Account. For instance, SA Harrison testified in her affidavit that from March 1, 2018 to July 18, 2018, approximately 14 checks totaling $11,000 were written by Defendant and paid to the order of K.D. for what appeared to be payroll. (W.D.N.C. 3:18MJ260, Doc. No. 2-2, ¶ 50). Based on an analysis of bank records, SA Harrison identified at least approximately $131,000 in merchant-customer credits to Defendant's Salon Account from March 1, 2018 to June 26, 2018. *Id.* at ¶ 56. SA Harrison estimated that approximately half of the $131,000 in merchant-customer credits from March 1 through June 26 were generated by the forced labor of K.D. *Id.* at ¶ 58. Thus, the $50,000 requested by the Government is a conservative amount, especially in light of the bank records showing the Salon grossed $482,679.72 during the time K.D. was forced to work at Luxury Salon. Furthermore, the Salon Account was used to pay for the tools Defendant used to abuse K.D. and the rent for the Salon where Defendant abused K.D. and forced her to work, thereby facilitating the offense.[5]

---

[5] The Government argues that the forced labor forfeiture laws are broad and would likely encompass the entire contents of Defendant's Salon Account. Defendant responds that forced labor is more akin to health care fraud, and suggests that salon proceeds purportedly derived from salon employees other than K.D. are not subject to forfeiture. However, Defendant does not suggest how to separate those amounts.

The Government correctly points out that the statutory language authorizing forfeiture in forced labor cases is much broader than in health care fraud cases. Forfeiture in health care fraud cases is limited to proceeds of the fraud. 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7). In forced labor cases, however, Congress has provided for the forfeiture of property involved in, used, or even

## IV. ORDER

**IT IS THEREFORE ORDERED** that the Government's Motion for Preliminary Order of Forfeiture, (Doc. No. 45), is **GRANTED.** Based upon Defendant's conviction and other evidence submitted by the Government, the following is hereby forfeited to the United States for disposition according to law:

- Approximately $2,209 in United States Currency seized on or about June 26, 2018 during execution of a Search Warrant at Luxury Nails Salon in Davidson, North Carolina;

- One 1.01 carat diamond set on a metal bracelet, found bagged with a diamond certificate and a receipt of purchase by victim K.D., and seized on or about June 26, 2018 during the execution of a Search Warrant at Luxury Nails Salon in Davidson, North Carolina;

- Approximately $50,000 in funds seized on or about August 9, 2018, via Seizure Warrant, from Wells Fargo Account 5867, such account held in the name of Thuy Tien Thuy Luong DBA Luxury Nails Salon.

If no third-party files a timely claim, this Order of Forfeiture shall become final.

**SO ORDERED**.

Signed: March 15, 2021

Kenneth D. Bell
United States District Judge

---

intended to be used to commit or to facilitate the commission of the violation, and any property traceable to such property. 18 U.S.C. § 1594.